# EXHIBIT A



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**August 27, 2021 16:13**

By: WILLIAM A. CARLIN 0009144

Confirmation Nbr. 2338291

CHARLOTTE MOHLER, ET AL                    CV 21 952356

   vs.
                                       **Judge:** JOHN D. SUTULA

STRYKER CORPORATION

**Pages Filed:** 8

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY

| | |
|---|---|
| CHARLOTTE MOHLER<br>1325 Ottawa Trail<br>Hastings, MI 49058<br><br>and<br><br>THOMAS MOHLER<br>1325 Ottawa Trial<br>Hastings, MI 49058<br><br>*Plaintiffs,*<br><br>v.<br><br>STRYKER CORPORATION<br>C/O Its Statutory Agent<br>SEAN C. ETHERIDGE<br>15120 N. Commerce Dr. N.<br>Dearborn, MI 48120<br><br>*Defendants* | Case No.<br><br>Judge<br><br><br><br>*Jury Demand Endorsed Hereon* |

## PLAINTIFFS' COMPLAINT

Plaintiffs, Charlotte Mohler and Thomas Mohler, complaining of Defendant, Stryker Corporation allege as follows:

### PARTIES

1. Plaintiff, Charlotte Mohler ("Plaintiff") is a United States citizen and resides at her address in Michigan.

2. Plaintiff, Thomas Mohler ("Thomas. Mohler"), is also a United States citizen and resides at 1325 Ottawa Trail, Hasting, Michigan. He is also the husband of plaintiff Charlotte.

3.  Defendant, Stryker Corporation, is a Delaware corporation with its principal place of business located in Kalamazoo, Michigan. Defendant is a manufacturer, as defined in the Ohio Products Liability Act ("OPLA"), R.C. § 2307.71, *et seq*.

## JURISDICTION AND VENUE

4.  This court has jurisdiction over this action because the injury took place at the Cleveland Clinic, in Cleveland Ohio.

5.  Venue is properly laid in Cuyahoga County because a substantial part of the events and omissions giving rise to plaintiff's claim occurred in Cuyahoga County, Ohio.

## FACTS

6.  On August 28, 2019, Plaintiff underwent spinal revision L3 – S1 fusion surgery because of the loosening of lumbar posterior spinal hardware.

7.  The spinal hardware was manufactured by Stryker Corporation and the surgery was performed Dr. Richard Schlenk of the Cleveland Clinic.

8.  On August 30 another lumbar x-ray of where the spinal surgery took place and it was discovered that the right-sided iliac screws had fractured which resulted in a mechanical failure of the implant.

9.  On August 30th, 2019, instead of being discharged from the hospital to go home, the Plaintiff was told by the surgeon that the screws were "defective" and fractured and she had to undergo further surgery on September 3, 2019, for revision of the right iliac fixation in L3-S1 and proceeded to have posterolateral spinal fusion surgery again.

10. As a direct and proximate cause of the defective Stryker spinal fusion hardware, the plaintiff Charlotte, has been left permanently disabled.

11. It is believed and therefore averred that Stryker had an FDA 510 K exemption

which still requires that Stryker offer a reasonable assurance of safety and effectiveness and pursuant to the FDA's 510 K, the exempted device must be suitable for its intended use.

## COUNT 1
## MANUFACTURER'S STRICT LIABILITY

12. Plaintiffs incorporate the preceding paragraphs.

13. Pursuant to OPLA, the implant was defective in manufacture in a way that was unsafe, unreasonably dangerous, and defective. This includes having been manufactured with inadequate, insufficient, improper warnings, and instruction. Further, due to the product's failure to conform to representations made by Defendant, and its defective condition when leaving its control, Plaintiff suffered severe injuries.

14. The following are some examples of the ways in which the implant was defective:

    A. It failed to conform to the representations made by Defendant to the public, including Plaintiff.

    B. It was actually defective when it left Defendant's control.

    C. It failed to restore functionality to Plaintiff's spinal cord.

    D. It has caused Plaintiff pain, both day and night, and she has been unable to obtain relief from said pain.

    E. It has left Plaintiff incapable of enjoying her daily life.

15. As a direct and proximate result of the defective implant Plaintiff sustained serious and permanent injuries as set forth herein.

16. As a direct result of the injuries, Plaintiff has been caused to undergo reasonable and necessary care and treatment and has incurred costs associated with that treatment and will continue to require such treatment and costs into the indefinite future.

17. The implant was defective when it left Defendant's possession and control and was

the direct and proximate cause of Plaintiff's revision surgery and injuries.

18. As a direct and proximate result of Defendant's conduct, the Plaintiff has suffered damages, including economic damages. In addition to those to be shown at trial, other damages include: permanent and substantial physical deformity; loss of spinal stability; past, present, and future pain and suffering; loss of income; loss of earning capacity; loss of an economic benefit; past, present, and future medical expenses; loss of capacity for the enjoyment of life.

## COUNT 2
## BREACH OF EXPRESS WARRANTY

19. Plaintiffs incorporate the preceding paragraphs.

20. Prior to the implant of Stryker hardware, Defendant induced its purchase and utilization by expressly warranting that consumers, including Plaintiff, that they could expect to receive the implant and it would provide safety and comfort when used for its intended purpose. In particular, Defendant expressly warranted that the implant would restore pain free mobility to Plaintiff's spinal cord.

21. Defendant publicly communicated this express warranty in a manner that was directed to the attention of doctors, orthopedic surgeons, hospitals and ultimately, to the public consumers, including Plaintiff, who would utilize the implant. For example, via advertisements, the Internet and descriptions of the product.

22. Plaintiff relied upon the skill and judgment of Defendant and their express warranty. However, the express warranty was not true. The implant that was used was defective, unfit, unsafe and unusable for its intended purpose.

23. Defendant breached its express warranty and as a direct and proximate result of that breach of warranty, Plaintiff suffered the injuries set forth in this complaint.

24. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered

damages, including economic damages. Including those to be shown at trial, other damages include: permanent and substantial physical deformity; loss of use spinal cord mobility; past, present, and future pain and suffering;; loss of an economic benefit; past, present, and future medical expenses; loss of capacity for the enjoyment of life.

## COUNT 3
## BREACH OF IMPLIED WARRANTY OF FITNESS

25. Plaintiffs incorporate the preceding paragraphs.

26. Defendant impliedly warranted that the implant was fit for its intended purpose; providing the user with a functional spinal cord stabilization implant that would allow the user to perform the usual and necessary functions of daily living, work and employment.

27. Plaintiff relied upon the skill and judgment of Defendant and the implied warranty of fitness. However, the implied warranty was not true. The implant was defective, unfit, unsafe and not usable for its intended purpose.

28. Defendant breached the implied warranty of fitness and, as a direct and proximate result, Plaintiff suffered the injuries set forth in this complaint.

29. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including special damages. Including those to be shown at trial, other damages include: permanent and substantial physical deformity; past, present, and future pain and suffering; loss of income; loss of earning capacity; loss of an economic benefit; past, present, and future medical expenses; loss of capacity for the enjoyment of life.

## COUNT 4
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

30. Plaintiffs incorporate the preceding paragraphs.

31. Defendant impliedly warranted that the implant was of merchantable quality, fit,

safe and in proper condition for the ordinary use for which the implant was designed and used.

32. Defendant also impliedly warranted that the implant was of good and merchantable quality, fit, safe, and in proper condition for its intended use and purpose; providing stabilization to the spine for engaging in daily routines and work and would keep the user reasonably free from pain.

33. In using the implant, Plaintiff relied upon Defendant's implied warranty of merchantability. However, the implant was not of merchantable quality and was unfit, unsafe and unusable for its intended purpose because it was in a defective condition when it left Defendant's assembly facility.

34. Defendant breached its implied warranty of merchantability and as a direct and proximate result, Plaintiff suffered the injuries set forth in this complaint.

35. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including special damages. Including those to be shown at trial, other damages include: permanent and substantial physical deformity; past, present, and future pain and suffering; loss of income; loss of earning capacity; loss of an economic benefit; past, present, and future medical expenses; loss of capacity for the enjoyment of life.

### COUNT 5
### LOSS OF CONSORTIUM

36. Plaintiffs incorporate the preceding paragraphs.

37. As a direct and proximate result of Defendant's negligent and/or intentional conduct, Plaintiff Thomas Mohler suffered the loss of consortium and services of his wife, Charlotte.

38. Plaintiff Thomas Mohler has been, and will continue to be, denied the consortium, companionship, care, aid, love, affection, society, loss of life's enjoyment, and the right of support

of his wife, Plaintiff.

39. As a direct and proximate result of Defendant's conduct, Plaintiff Thomas Mohler has suffered damages, including special damages. Including those to be shown at trial, other damages include: past, present, and future pain and suffering and loss of capacity for the enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court will enter judgment in favor of them, and against Defendant, and grant Plaintiffs damages and such legal and equitable relief as may be appropriate by:

1. Awarding compensatory damages in an amount in excess of $1,000,000.00;

2. Awarding special economic damages, in excess of $1,000,000.00, to fully compensate Plaintiffs for all injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including permanent instability and loss of balance and pain and suffering;

3. Awarding damages to compensate Plaintiffs for general and special damages, including uncapped non-economic damages pursuant to R.C. §2315.18(B)(3)(a) and (b), for emotional distress, humiliation, embarrassment, and anguish;

4. Awarding Plaintiffs prejudgment and post-judgment interest;

5. Awarding Plaintiffs their costs and reasonable attorneys' fees related to this action;

6. Awarding Plaintiff all such other relief as the Court considers appropriate, fair, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

                                                            */s/ William A. Carlin*
                                                            William A. Carlin (0009144)

Respectfully submitted,

/s/ *William A. Carlin*

William A. Carlin (0009144)
wcarlinesq@aol.com
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526 {fax}

Mark W. Biggerman (0064092)
mark@mblegal.com
29325 Chagrin Blvd., Suite 305
Pepper Pike, Ohio 44122
(216) 831-4935
(216) 831-9526 {fax}

*Attorneys for Plaintiffs*